JACK HABER AND DORIS HABER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2086–66.    Filed May 15, 1969.

256

*Selig I. Goldin*, for the petitioners.
*W. Reeder Glass*, for the respondent.

258

OPINION

The initial issue presented for decision is whether the forgiveness by Beacon Sales Co., a subchapter S corporation, of indebtedness owed by a shareholder, petitioner Jack Haber, should be treated as a distribution of property resulting in a corresponding reduction of

the basis of the shareholder's stock in such corporation. An affirmative determination of this issue would require the holding, pursuant to section 1374(c)(2), that petitioner was not entitled to deduct a prorata amount of the net operating losses incurred by Beacon Sales Co. in subsequent taxable years.

Beacon Sales Co. was, from its fiscal year ending June 30, 1960, through the taxable years before the Court, an electing small business corporation under the provisions of subchapter S. It suffered net operating losses for the taxable years ending June 30, 1960, and June 30, 1961, of $25,822.36 and $3,598.64, respectively. Pursuant to the provisions of section 1374, petitioner deducted for the above years, $11,180 as his prorata share of the net operating losses.

It has been established that a corporation's cancellation of indebtedness owed by a shareholder, by entries on its books of account crediting the loan receivable and charging of a like sum against earned surplus, constitutes a distribution of property to the shareholder. See *Shephard* v. *Commissioner*, 340 F. 2d 27 (C.A. 6, 1965), affirming per curiam a Memorandum Opinion of this Court, certiorari denied 382 U.S. 813 (1965), and cases cited therein. That amount of the distribution which is attributable to the current and/or accumulated earnings and profits of the corporation is treated as a taxable dividend to the shareholder in the year of the distribution. Secs. 301(c)(1) and 316(a). That amount of the distribution for which no earnings and profits are available would be applied against and reduce the adjusted basis of the shareholder's stock. Sec. 301(c)(2).

The primary variance between the treatment of distributions by a corporation, as described above, and that of a subchapter S corporation, occurs when distributions of income previously taxed to shareholders within the meaning of section 1375(d)[4] and regulations there-

---

[4] SEC. 1375. SPECIAL RULES APPLICABLE TO DISTRIBUTIONS OF ELECTING SMALL BUSINESS CORPORATIONS.

(d) DISTRIBUTIONS OF UNDISTRIBUTED TAXABLE INCOME PREVIOUSLY TAXED TO SHAREHOLDERS.—

(1) DISTRIBUTIONS NOT CONSIDERED AS DIVIDENDS.—An electing small business corporation may distribute, in accordance with regulations prescribed by the Secretary or his delegate, to any shareholder all or any portion of the shareholder's net share of the corporation's undistributed taxable income for taxable years prior to the taxable year in which such distribution is made. Any such distribution shall, for purposes of this chapter, be considered a distribution which is not a dividend, but the earnings and profits of the corporation shall not be reduced by reason of any such distribution.

(2) SHAREHOLDER'S NET SHARE OF UNDISTRIBUTED TAXABLE INCOME.—For purposes of this subsection, a shareholder's net share of the undistributed taxable income of an electing small business corporation is an amount equal to—

(A) the sum of the amounts included in the gross income of the shareholder under section 1373(b) for all prior taxable years (excluding any taxable year to which the provisions of this section do not apply and all taxable years preceding such year), reduced by

(B) the sum of—

(i) the amounts allowable under section 1374(b) as a deduction from gross income of the shareholder for all prior taxable years (excluding any taxable year to

under, are made to the shareholders of the subchapter S corporation in subsequent years. Since the Beacon Sales Co., from the inception of its election under the provisions of subchapter S through the taxable years in question, did not experience a financially favorable year where taxable income was constructively passed through to its shareholders, it is clear that the corporation did not have undistributed, previously taxed income, as defined by section 1375(d), to distribute in 1961 or in the years before us. In the absence of any possible distribution of previously taxed income, the forgiveness of Jack's indebtedness by Beacon Sales Co. in 1961 will be accorded the same treatment under sections 301 and 316 as any other corporation's distribution of property would receive.[5]

Respondent has determined in his notice of deficiency, *inter alia*, that petitioner was not entitled to deduct the prorata amount of the corporation's net operating losses attributable to his stock ownership during the taxable years in question on the theory that Jack had recovered his basis in the stock prior to 1962. He contends on brief that the forgiveness of indebtedness by the corporation was not a distribution out of current or accumulated earnings and profits and, should be treated, in accordance with section 301(c)(2), as a reduction in the adjusted basis of petitioner's stock. Taking into account the deduction by petitioner, for the taxable years ending June 30, 1960, and June 30, 1961, of net operating losses totaling $11,180, and the corresponding reduction of stock basis treatment under section 1376(b)(1),[6] respondent concludes, as shown below, that the basis of petitioner's stock was reduced to zero as of the end of his taxable year 1961:

which the provisions of this section do not apply and all taxable years preceding such year), and

(ii) all amounts previously distributed during the taxable year and all prior taxable years (excluding any taxable year to which the provisions of this section do not apply and all taxable years preceding such year) to the shareholder which under subsection (f) of paragraph (1) of this subsection were considered distributions which were not dividends.

[5] Sec. 1.1372–1(c) of the income tax regulations provides, *inter alia*, that to the extent that the other provisions of the Code are not inconsistent with those under subch. S and the regulations thereunder, such provisions will apply with respect to both the electing small business corporation and its shareholders in the same manner that they would apply had no election been made.

[6] SEC. 1376. ADJUSTMENT TO BASIS OF STOCK OF, AND INDEBTEDNESS OWING, SHAREHOLDERS.

(b) REDUCTION IN BASIS OF STOCK AND INDEBTEDNESS FOR SHAREHOLDER'S PORTION OF CORPORATION NET OPERATING LOSS.—

(1) REDUCTION IN BASIS OF STOCK.—The basis of a shareholder's stock in an electing small business corporation shall be reduced (but not below zero) by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to such stock (as determined under section 1374(c)).

Original basis in stock_____ $15,000.00
Less:
    Amount deducted as net operating loss on 1960 and
      1961 Federal income tax returns_____ $11,180.00
    Outstanding loan balance due Beacon Sales Co.
     charged to earned surplus by debtor-in-possession
      on June 30, 1961_____ 14,380.05
        Total reductions_____ 25,560.05

Basis of stock after reductions pursuant to secs. 1376(b)(1) and
  301(c)(2) _____ 0

Section 1374(c)(2) provides, insofar as pertinent here, that the deduction by a shareholder of his prorata share of the corporation's net operating loss is limited to the shareholder's adjusted basis in his stock of the corporation determined as of the close of the taxable year of the corporation. In light of his contention that petitioner's adjusted basis in his stock was zero as of the end of 1961 and all years thereafter, respondent concludes that section 1374(c)(2) would result in the complete disallowance of any possible net operating loss deduction by petitioner for the taxable years in question. Respondent's application of section 1374(c)(2) is without fault; it is only the correctness of his contention that petitioner's stock basis was reduced to zero which gives rise to question.

To prove that the forgiveness of indebtedness was not, as respondent contends, a distribution under section 301(c)(2), reducing the adjusted basis of stock, petitioner would have to establish that this was a distribution out of current or accumulated earnings and profits. Put another way, petitioner would have to prove the availability, and amount thereof, of current or accumulated earnings and profits to be applied to this distribution. For reasons unknown, petitioner has not seen fit to discuss this issue either at trial or on brief, and the record is devoid of evidence as to the corporation's earnings and profits at the end of its 1961 fiscal year. Respondent's notice of deficiency disallowed the deductions of net operating losses on the ground that petitioner had not established that he was entitled to the deductions. It is petitioner's burden as a result of respondent's determination of deficiency, to prove that he is entitled to the deductions. In the absence of evidence to establish the amount of earnings and profits of Beacon for the year ending June 30, 1961, petitioner cannot prevail as to this issue.

While it is established that the cancellation of the debt was evidenced by a charge to earned surplus, there is nothing in the facts to

tell us how much earned surplus there was.[7] It is possible that this account had a zero balance before the entry reflecting the cancellation of petitioner's debt was made; it would be pure speculation and surmisal for us to conclude that there was some amount as the balance of this account.

In the absence of any evidence establishing the amount of earnings and profits, we must sustain respondent's contention that the cancellation of indebtedness in 1961 was a distribution effecting a reduction in petitioner's stock basis, which, pursuant to section 1374(c)(2), prevented the subsequent deductions, for the taxable years in question, of net operating losses passed through by the electing subchapter S corporation.

The second issue presented for our decision is whether certain amounts paid by Beacon Sales Co. to petitioner during the years in question represented nontaxable bona fide loans.

The cash disbursement books for Beacon Sales Co. contained a column entitled "J. Haber Payable." During the calendar years 1962, 1963, and 1964, the corporation made distributions that were recorded in this column. During the taxable years in question, at about the time Beacon Sales Co.'s employment tax returns were filed, the corporation, with petitioner and his brother in control of the corporation and of its books and records, would determine what part of the amounts paid to or for the benefit of petitioner was to be considered compensation to him and what part was to be characterized as loans. To reflect this action on its books, it would debit officers' salaries account and credit officers' loan account. The amounts remaining in the officer's loan account were characterized as loans on its books, and as of December 31, 1964, petitioner's account had a balance of $19,802.02.

Respondent contends that the amounts reflected as loans to petitioner on the records and tax returns of Beacon Sales Co. for the taxable years in question constituted, in reality, taxable compensation. Petitioner, to the contrary, contends that these amounts constituted nontaxable bona fide loans. Because of the possibility that these amounts represented distributions of property in respect of stock under section 301, we will first deal with the issue of whether they constituted bona fide loans, and then, if our determination is in the negative, we

---

[7] Even if we were supplied with information as to the balance of the earned surplus account, the further and possibly more complex problem would arise as to the translation of this amount into an amount correctly reflecting the balance of the earnings and profits account. Earned surplus, an accounting concept, is not necessarily computed in the same manner as earnings and profits, an income tax concept. See sec. 312, and the regulations thereunder.

will determine whether they were taxable compensation or distributions in respect of stock.

Whether a withdrawal is a bona fide loan is a factual question, and depends upon the existence of an intent on the shareholder's part to repay at the time the withdrawal is made, and the intent of his collective alter ego, the corporation, to enforce the obligation. *Chism's Estate* v. *Commissioner*, 332 F. 2d 956, 959 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court. The disposition of such a factual issue turns upon a consideration and weighing of all the pertinent facts and circumstances surrounding the transaction between the stockholder and the corporation. *Elliott J. Roschunk*, 29 T.C. 1193, 1202 (1958), affd. 271 F. 2d 267 (C.A. 5, 1959), certiorari denied 362 U.S. 988 (1960). When the withdrawers are in substantial control of the corporation, as petitioner and his brother were in this case, such control invites a special scrutiny of the situation. *W. T. Wilson*, 10 T.C. 251 (1948), affd. 170 F. 2d 423 (C.A. 9, 1948). We have concluded that the facts of record here will not support a finding that the amounts paid to petitioner constituted bona fide loans.

No notes or other evidence of indebtedness were given to Beacon Sales Co. by petitioner representing the amounts remaining in the officers' loan accounts, nor was any collateral or security for repayment of the loan accounts provided. The corporation did not make any agreement with petitioner as to the time of repayment or the interest to be paid. No formal or informal resolution was ever passed by the corporation which discussed or effectuated any policy of loaning money to petitioner or his brother. These distributions, and the subcharacterizations thereof as compensation and loans, were in proportion to the stock ownership of petitioner and his brother.

Petitioner's contribution of services as an important employee of the corporation did not diminish during the years in question while his salary was diminished in almost the same amounts as those which were reflected on the books of the corporation as "loans." The "loan" withdrawals were made despite the absence of profits earned by the corporation and regardless of its financial position. During the years in question, petitioner did not make any payments, either in interest or principal, with respect to the amounts reflected as loans. The evidence is not sufficient to establish that at any subsequent time Jack ever repaid any sums on the alleged loans.

The above facts make it quite obvious that the petitioner had no intent at the time the withdrawals were made to repay them, nor did the corporation intend to enforce the repayment. Accordingly, we are compelled to sustain respondent's contention that the amounts in question did not constitute bona fide loans.

Petitioner calls our attention to an order entered by the referee in bankruptcy requiring petitioner to turn over certain sums which were improperly withdrawn at a time, within 1 year preceding the filing of the original petition in bankruptcy, when Beacon Sales Co. was not meeting its obligations as they matured. Petitioner contends that this order demonstrates that he was obligated to repay all loans and that the intent to repay was and is present. We do not agree, but we have carefully considered it as part of the evidence of record.

The petition by the trustee in bankruptcy only referred to the amounts reflected as loans for the taxable year 1964 and not the prior 2 taxable years in question; the total balance due on Jack's loan account was not scheduled as an asset of the bankrupt corporation. The scanty evidence which petitioner does submit in regard to the bankruptcy proceedings and the order resulting therefrom does not convince us, in light of the great weight of evidence negating the bona fides of these supposed loans, that these amounts were other than poorly disguised payments of salary or distributions with respect to stock. The referee's turnover order regarding improper withdrawals within 1 year of the institution of such proceeding does not establish, for Federal tax purposes, the bona fides of the distributions in question as loans. There is no evidence of record that Jack ever complied with this order or repaid any portion of the alleged loans thereafter, there merely being some confused and unsubstantiated testimony by Jack at trial that he repaid $3,000 on the loans *prior to the bankruptcy*. On brief the petitioner urges us to consider the order directing the trustee to accept the sum of $2,000 in full settlement of all claims of the bankrupt against Jack. This order was not introduced in evidence and even if we were to consider it, it would not establish that Jack ever complied therewith. Petitioner's arguments are not convincing to lead us to the conclusion that the withdrawals were actually loans.

The final issue presented for decision is whether these amounts constituted compensation for services or distributions of property with respect to the stock of petitioner. We have concluded that the amounts in question fall more properly into the classification of compensation for services.

A common characteristic of distributions with respect to stock is the direct correspondence that they bear to the various percentages of stockholdings. While this characteristic is present in the case before us, there are other more substantial factors which point to the conclusion that these amounts were not distributions with respect to stock, but, instead, represented compensation for services. Another common characteristic of distributions with respect to stock, especially in those

situations where they are disguised as loans, is the existence of corporate earnings and profits. In the situation at hand, Beacon Sales Co. was consistently incurring losses and, as reported on its tax returns for the taxable years ending June 30, 1963, and June 30, 1964, had a deficit as opposed to a plus amount in accumulated earnings and profits.

For the years 1954 through 1959, before its election under the provisions of subchapter S, Beacon Sales Co. had paid petitioner salaries ranging from $10,045 to $10,244. Petitioner's contribution of services to the corporation did not diminish in subsequent years, including the years in question, but his reported salary from 1960 through 1964 was diminished to a range of from $5,200 to $7,500. For the years 1962 through 1964, various amounts paid to petitioner, $4,544, $6,128.03, and $3,532, respectively, were reflected as loans on the corporation's records. The addition of the amounts reflected on Beacon's records as salary and those as loans reveals the interesting fact that petitioner was receiving approximately the same amounts in the years in question as in the preelection years. While it may be understandable that an officer-stockholder of a financially depressed corporation may volunteer to have his salary lowered so as to provide the corporation with some more working capital, this understanding quickly vanishes when these supposedly needed funds are used, in amounts closely corresponding to the reductions in salary, to make "loans" to the officer-stockholder. We think that the amounts reflected as loans to petitioner during the years in question were nothing more than disguised compensation for services so as to assist petitioner in the reduction of his income taxes.

Being dependent for its disposition upon the determination of the above issues, which have been resolved in respondent's favor, the disallowance by respondent of various amounts of medical deductions for the years in question will, accordingly, likewise be sustained.

*Decision will be entered for the respondent.*