OTTO A. AHLEGIAN and ESTATE OF DOROTHEA J. AHLEGIAN, DECEASED, OTTO A. AHLEGIAN, EXECUTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ahlegian v. Commissioner
Docket No. 6274-73.
United States Tax Court
T.C. Memo 1975-342; 1975 Tax Ct. Memo LEXIS 34; 34 T.C.M. (CCH) 1485; T.C.M. (RIA) 750342; November 13, 1975, Filed Allan Hull, for the petitioners. James E. Dunn, Jr., for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in the income taxes of petitioners *35 in the amounts of $27,767.07 and $2,938.82 for the years 1969 and 1970, respectively. The sole issue for consideration is whether distributions of $55,000 in 1969 and $9,400 in 1970 from a corporation, Precision Industries, Inc., to petitioners constitute dividends to petitioners. Petitioners argue that these distributions were received in payment for a building which they sold to the corporation, or, alternatively, they were bona fide loans from the corporation. FINDINGS OF FACT Certain facts have been stipulated and are found accordingly. The petitioners, [1] Otto and Dorothea Ahlegian, filed joint Federal income tax returns for the calendar years 1969 and 1970 with the Internal Revenue Service Center, Cincinnati, Ohio. Since Dorothea is deceased, we shall, for convenience, sometimes hereinafter refer to Otto Ahlegian (Ahlegian) as petitioner. Petitioners' address on the date the petition was filed herein was 3400 Wooster Road, Apt. 211, Rocky River, Ohio. During the years here in issue Otto Ahlegian and Dorothea *36 Ahlegian were the sole officers and directors of Precision Industries, Inc. (hereinafter Precision) and owned in excess of 67 percent of the outstanding stock of the corporation. Actually, petitioners owned at least 122 shares of stock in Precision and only 20 shares were owned by other individuals. Prior to 1967, petitioners owned a building located at 13410 Enterprise Avenue, Cleveland, Ohio, in which building the business of Precision was conducted. In 1967, petitioners determined that this building would be contributed to the corporation in return for stock. For this purpose, the building was valued at the out-of-pocket costs which had been incurred for it by petitioners. Title to this property located at 13410 Enterprise Avenue, in Cleveland, was transferred to Precision in 1967. Although no actual certificates were issued, the corporation's accountants treated the stock as if it had been issued, and a dividend of $1 per share was paid on all shares including those representing the building transferred to the corporation. In 1969 petitioners wanted to purchase a condominium in Florida. Petitioner contacted his banker in an attempt to obtain financing for the proposed condominium *37 purchase. The banker was reluctant to have the bank make a real estate mortgage loan on a Florida condominium, but apparently determined that Precision had sufficient funds to cover the cost of the condominium without jeopardizing the corporation's financial condition and credit standing with the bank. Based on this determination, petitioners obtained the necessary funds from Precision. In November 1969, Precision made a cash distribution of $5,000 to petitioners. Additionally in December 1969 the corporation made another distribution to petitioners in the amount of $50,000. Finally on May 18, 1970, Precision made a distribution to the petitioners of $9,800 of which $400 was the repayment of a loan from them which was not related to the issue herein. Precision kept its books and reported its taxable income on a fiscal year basis ending March 31. During the fiscal years ended March 31, 1970, and March 31, 1971, Precision had earning and profits in excess of the distributions made to petitioners. The cash distributions to petitioners in 1969 and 1970 totaling $64,400 equaled the amount of money which petitioners had invested in the building. Concomitant with these distributions *38 from Precision, petitioners attempted to recharacterize the transaction in 1967 from an exchange of the building for shares of stock of Precision to a sale of the building to Precision for cash as represented by the distributions in these later years. Subsequent to these cash distributions, Ahlegian was informed by his accountants that he could not claim that these monies were received as a result of a sale of the building. Accordingly, Ahlegian was advised to treat the $55,000 received in 1969 and $9,400 received in 1970 as loans from the corporation. Precision's corporate income tax return for the fiscal year ended March 31, 1970, showed on the attached balance sheet, as loans to stockholders, zero at the beginning of the fiscal year and $55,000 at the end of the year. Similarly, its corporate tax return for the fiscal year ended March 31, 1971, reflected loans to stockholders in the amount of $55,000 at the beginning of the fiscal year and $64,800 at the end of that year. At the time the cash distributions were made neither the petitioners nor the corporation intended them to be considered loans. When the actual distributions were made, there was no intention on the part of *39 either petitioners or the corporation that such distributions were to be repaid. OPINION Respondent determined that the payments totaling $55,000 in 1969 and $9,400 of the $9,800 payment in 1970 made to petitioners by Precision represented dividends to the petitioners. [2]
Petitioners have attempted to rebut the determination of the Commissioner with two alternative arguments, neither of which we find persuasive. First *40 petitioners assert that the original transaction in 1967 involving the exchange of the building for stock was never completed because the corporation failed to issue stock certificates to the petitioners. Petitioners conclude that Precision was obligated to issue the stock certificates; that the failure to do so constituted a breach of the contract; and that the petitioners were, therefore, entitled to rescind this initial agreement and sell the building to Precision for cash. Consequently, they contend that the monies distributed to them in 1969 and 1970 represent payments from the sale of the building to the corporation rather than dividends. [3]
Alternatively, petitioners argue that if they are legally unable to rescind the original transaction and reclassify *41 it as a sale for cash, then they can retroactively recharacterize their intent and recast the distribution of the funds as a loan. Finally, petitioners contend that in any event, the money could not have been received as a dividend because there was never any intention to issue a dividend. We find little substance to any of petitioners' arguments. Consequently, we hold for respondent. Petitioners first argue that since stock certificates were not issued, the corporation breached the original agreement in 1967 thereby giving petitioners the right to rescind. Unfortunately, they have assumed that issuance of stock certificates is equivalent to the shares themselves and a prerequisite for a person to become a shareholder of a corporation. Both the statutory and case law of Ohio indicate otherwise and basically state that certificates for shares of corporate stock are merely evidence of ownership of such shares. Ohio Revised Code, General Corporation Law, sections 1701.01(F), 1701.25(A) and (B); Ohio Revised Code, Investment Securities, section 1308.01(a)(1)(d); Millar v. Mountcastle,161 Ohio St. 409, 119 N.E. 2d 626 (1954). In 1967, when petitioners transferred *42 the building to Precision, they increased their holdings in the corporation by 22 shares. The accountants for Precision treated these 22 shares of stock as issued. A dividend of $1 per share was paid by Precision on all shares including those representing the transferred building. Clearly, the exchange of the building for shares in Precision was a completed transaction and treated as such by the parties for over 2 years. Petitioners argue that the issuance of the stock certificates was absolutely essential for the transaction to be completed. As previously shown, we disagree with this assertion. If it ever became necessary for petitioners to obtain the certificates to evidence their stock ownership, since petitioners were the sole officers and directors and majority stockholders they could simply cause Precision to issue such certificates. We cannot help suspecting that the petitioners recognized the original exchange as completed but realized that if they caused Precision to redeem these 22 shares they were likely to experience adverse tax consequences. See sec. 302, I.R.C. 1954. As a consequence, they attempted to treat the exchange as incomplete and reclassify it as a sale. *43 However, since the initial transaction was completed, we find that no sale occurred in 1969. Similarly, we are not persuaded that these cash distributions constituted loans. Throughout this case, the major thrust of petitioners' argument in claiming a loan was established has been that when they were informed that the distributions could not be treated as money received from a sale, they had the right at that time to change their intention and recharacterize the distribution as a loan. Indeed, they concede a loan was never intended originally. Petitioners' position is clearly an erroneous interpretation of the law. A taxpayer is bound for tax consequences by the form in which he casts his transaction. The characterization of payments by a corporation to its shareholders cannot be changed retroactively because at the time the payments were made, the parties were mistaken as to certain facts or the actual state of the law. PaulaConstruction Co.,58 T.C. 1055 (1972), affd. 474 F. 2d 1345 (C.A. 5, 1973). The question of whether a cash distribution by a corporation to a stockholder is a dividend or a bona fide loan is a factual question and depends *44 upon the intent of the parties at the time the money was disbursed. Berthold v. Commissioner,404 F. 2d 119 (C.A. 6, 1968), affirming a Memorandum Opinion of this Court; Electric & Neon, Inc.,56 T.C. 1324 (1971), affd. 496 F. 2d 876 (C.A. 5, 1974); Jack Haber,52 T.C. 255 (1969), affirmed per curiam 422 F. 2d 198 (C.A. 5, 1970). Petitioners have stipulated that at the time the distributions were made neither the corporation nor the petitioners intended that such distributions should be considered loans. As a consequence, we must conclude that a bona fide indebtedness was never created. In addition to this stipulation, petitioners have failed to establish any of the usual indicia of a loan. No proof was introduced to show that notes were issued, collateral was given, interest was required, or a time was established for repayment. Weighing all of the pertinent facts and circumstances surrounding the distributions, and recognizing that a situation where the distributees are in substantial control of the corporation requires special scrutiny, Electric & Neon, Inc.,supra;Jack Haber,supra, *45 we find that the payments in question were not loans. In support of their position, petitioners assert that they have repaid the corporation and have introduced into evidence copies of eight checks to substantiate this claim. Ahlegian testified that for over 23 years he has periodically loaned money to the corporation. The first seven checks, payable to Precision, contain the notation "loan." We have no way of knowing whether these checks were loans to the corporation or were, as Ahlegian alleged, in repayment of the distributions to him. The eighth check payable to Precision in the amount of $56,600 and dated July 13, 1973, does not contain a notation. Suffice it to say that this last check was written almost 2 months after the issuance of the notice of deficiency, and is of little probative value in establishing that a loan was intended. See Anketell Lumber and Coal Co. v. United States,1 F. Supp. 724 (Ct. Cl. 1932). Petitioners have also made much of the fact that a dividend was never intended. As respondent correctly points out, the fact that there was no intention on the part of Precision to pay a dividend is of no consequence. Section 316, I.R.C. 1954, *46 does not require that a corporation intend to pay a dividend or that a shareholder intend any distribution as such, but rather, specifies that a dividend is "any distribution of property made by a corporation to its shareholders * * * out of its earnings and profits. * * *" Respondent determined that the $55,000 distributed to petitioners in 1969 and $9,400 of the $9,800 distributed to petitioners in 1970 were dividends. Petitioners have the burden of proving error in respondent's determination. Lack of intent that the distributions be dividends is not enough to prove error in respondent's determination, so it must be sustained. Precision had sufficient earnings in both 1969 and 1970 to qualify these distributions as dividends under section 316, I.R.C. 1954. Therefore, we find that the amounts in dispute were taxable as dividends received by petitioners in 1969 and 1970 under section 301(a) and (c), I.R.C. 1954. Decision will be entered for the respondent.
Footnotes
1. Dorothea J. Ahlegian died subsequent to the time the petition was filed. Her estate has been substituted for her as one of the petitioners in this case.↩
2. Part of the deficiency in 1970 stems from respondent's disallowance of a medical deduction claimed by petitioners in the amount of $273.84. Respondent apparently determined that the increase in petitioners' adjusted gross income stemming from the alleged dividend received in 1970 of $9,400 would require a recomputation and reduction of the claimed medical deduction. Sec. 213, I.R.C. 1954↩. Petitioners have not questioned this adjustment. We believe that the issue of the medical deduction is contingent upon whether the $9,400 is a taxable dividend. Since we find that this money is a dividend, and since petitioners have not argued the medical deduction issue independently, we conclude that the medical deduction in the amount of $273.84 must be disallowed.
3. It is doubtful that this is an issue properly raised in this case. It was not specifically mentioned in the pleadings and it was our understanding at the opening of the trial that counsel for petitioners disclaimed any intent to argue that the transaction was a sale for cash rather than for stock. However, we have considered the argument and in light of our conclusion with respect thereto, the question becomes unimportant.↩