ROBERT G. SHANNON and CLARINE E. SHANNON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shannon v. Commissioner
Docket No. 2730-71.
United States Tax Court
T.C. Memo 1976-304; 1976 Tax Ct. Memo LEXIS 101; 35 T.C.M. (CCH) 1371; T.C.M. (RIA) 760304; September 27, 1976, Filed *101 1. Held, cash advances made to petitioner by his wholly owned corporation were dividend distributions and not bona fide loans. 2. Held,further, petitioner's personal automobile expenses paid by his wholly owned corporation were dividend distributions to him. 3. Held,further, petitioner failed to substantiate, under section 274(d), expenditures claimed as deductions for business entertainment. David Ostrove, for the petitioners. Jonathan A. Brod, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Petitioner
Year
Deficiency
Robert G. Shannon
1963
$1,234.34
Clarine E. Shannon
1963
1,288.62
Robert G. and Clarine
1964
1,581.33
E. Shannon
1965
1,838.39
1966
2,243.94
1967
1,087.59 The issues remaining for decision are: (1) whether cash payments made to or for the benefit of Robert G. Shannon by his wholly-owned corporation were taxable dividends or bona fide loans; (2) whether automobile expenses paid by R. G. "Bob" Shannon, Inc., on behalf of Robert G. Shannon constituted dividend income; and (3) whether petitioner is entitled to deductions, under sections 162 and 274, [1] for expenditures *102 allegedly incurred in the operation of a boat for business purposes. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are Robert G. and Clarine E. Shannon, husband and wife, who resided in Los Angeles, Calif., at the time the petition in this case was filed. Petitioners filed separate Federal income tax returns for the year 1963 and they filed joint Federal income tax returns for the years 1964 through 1967. All returns for the years in issue were filed with the District Director of Internal Revenue in Los Angeles, Calif.
During the years in issue, Robert G. Shannon (hereafter referred to as Robert or petitioner) was the sole stockholder and the president of R. G. "Bob" Shannon, Inc. (hereafter referred to as the corporation). The corporation was in the business of selling group insurance plans to unions. In connection with such business the corporation also administered Taft-Hartley Trust Funds. In each of the years 1963 through 1967, the corporation made various cash payments to or for the benefit of Robert. *103 Most of the cash payments made on Robert's behalf were in respect of an obligation incurred by Robert for the purchase of a boat. These payments were recorded in the corporation's general ledger as debits to account No. 107, which was entitled "Due From Officer - R. G. Shannon." During the years in issue various credits, totaling $9,522.89, were made to account No. 107. The account balance at the end of each of the years in issue was as follows: Increase Over
Prior Year's Ending
Balance
Ending Balance
12-31-63
$11,258
$7,296
12-31-64
17,431
6,173
12-31-65
23,827
6,396
12-31-66
31,290
7,463
12-31-67
35,200
3,910
The cash advances were unsecured and were interest free. There was never a ceiling on the amount which could be advanced and a repayment date was never established. Since its inception in 1951, the corporation has never paid a formal dividend. The accumulated earnings and profits of the corporation were as follows: December 31, 1963
$18,794.71
December 31, 1964
22,376.11
December 31, 1965
28,625.25
December 31, 1966
33,148.39
December 31, 1967
35,132.33
Respondent's audit of petitioner's returns for the years in issue began on February 9, 1968. During the course of the audit, the internal revenue agent *104 asked both petitioner's accountant, Saul Ramin, and the attorney then representing petitioner, Melvin Honig, whether there were any promissory notes or corporate minutes reflecting the cash advances. The agent was provided with the corporate minute book which contained minutes of board meetings held on the following dates: December 29, 1951, March 18, 1952, January 5, 1955, and January 7, 1960. The minute book was damaged in a fire which occurred in 1957, [2] but all documents contained therein were legible. None of the above minutes makes any reference to resolutions by the board of directors authorizing loans to officers. When the revenue agent met with petitioner's counsel to discuss the results of the audit and the proposed adjustments, she again inquired about the existence of promissory notes or corporate minutes reflecting loans to Robert. She was told by Honig that to his knowledge none existed. However, in November or December of 1970, petitioner's trial counsel, David Ostrove, presented the district conferee with a copy of minutes of a special board of directors *105 meeting held on February 15, 1962. Those minutes indicate that the following resolution was adopted by the board of directors on February 15, 1962: [3]
RESOLVED: That this Board hereby authorizes a loan payable account on the books of this corporation, to which any and all loans made to ROBERT G. SHANNON shall be charged. This Board considers all such loans to be bona fide loans from this corporation to ROBERT G. SHANNON which must be repaid by ROBERT G. SHANNON, upon demand of this corporation. ROBERT G. SHANNON shall be required to sign a demand note as of the last day of each calendar year, reflecting the then balance due this corporation for any and all loans or advances made to ROBERT G. SHANNON by this corporation to said date. The purpose of this resolution is to clarify the fact that any and all loans or advances to ROBERT G. SHANNON are bona fide loans and are not in any way to be considered dividends to ROBERT G. SHANNON. Upon repayments of said amounts, they are to be treated as repayments of loans due this corporation and not to be construed as contributions to capital, but solely as repayments of loans to this corporation. The balance due from ROBERT G. SHANNON to *106 this corporation as of December 31, 1962 is $3,962.45. At that same district conference, copies of six promissory notes were presented to the district conferee. The notes are dated December 31, 1962, December 31, 1963, December 31, 1964, December 31, 1965, December 31, 1966, and December 31, 1967, respectively; and each contains a promise by Robert to pay the corporation on demand the balance in the account as of the date thereon. Respondent has questioned the authenticity of the 1962 minutes and of each of the above promissory notes.[4] Activity in account No. 107 continued subsequent to *107 respondent's audit but by the time of trial the balance in the account was zero. During 1966 the corporation paid personal automobile expenses totaling $388.56 on behalf of petitioner's wife and son and during 1967 the corporation paid petitioner's personal automobile expenses totaling $375.40. Petitioner owned a 1948 Chris Craft cruiser, on which he entertained business associates during each of the years in issue. The following chart illustrates the total of depreciation and operating expenses which petitioner maintains were incurred with respect to this boat: Year
Amount
1963
$4,774.73
1964
3,119.95
1965
2,785.04
1966
2,541.79
1967
2,292.52
Representing that his business use of the boat was 55 percent in each of the above years, petitioner claimed deductions equal to 55 percent of the above amounts. Respondent denied all such deductions. ULTIMATE FINDING OF FACT During the years in issue there was never an intention on petitioner's part to repay the amounts advanced to him by the corporation. OPINION Issue 1. Dividend Distributions or Loans
Petitioner's wholly-owned corporation made cash advances to him or for his benefit, which were recorded in the corporation's general ledger (account *108 No. 107) as "Due From Officer - R. G. Shannon." For each of the years in issue, respondent determined that the amount by which the year end balance in the account exceeded the balance as of the end of the prior year constituted dividend income to petitioner. Petitioner maintains that all such cash advances were bona fide loans. We agree with respondent. Whether the advances were bona fide loans is a factual question which depends upon the existence of an intention on petitioner's part to repay and a corresponding intention on the corporation's part to enforce the obligations. Such intent must have existed at the time the advances were made. Chism's Estate v. Commissioner,322 F. 2d 956 (9th Cir. 1963), affg. a Memorandum Opinion of this Court; Clark v. Commissioner,266 F. 2d 698, 710-711 (9th Cir. 1959), affg. and remanding a Memorandum Opinion of this Court; James K. Pierce,61 T.C. 424 (1974); Jack Haber,52 T.C. 255 (1969), affd. per curiam 422 F. 2d 198 (5th Cir. 1970). Since intent is a state of a mind rarely susceptible of proof by direct evidence, the courts have considered a number of factors for the purpose of determining the actual intent and purpose of the parties *109 at the time of the transactions in issue. Walter K. Dean,57 T.C. 32, 43 (1971). Petitioner has the burden of proof, Rule 142, Tax Court Rules of Practice and Procedure, and in discharge thereof he relies on the following factors: (1) a resolution by the corporation's board of directors authorizing loans to petitioner; (2) the fact that the advances were recorded on the corporation's ledger as loans; (3) the existence of promissory notes; (4) total "repayments" during the years in issue of $9,522.89; and (5) the fact that by the time of trial the account balance was zero. It is not necessary to resolve the questions raised by respondent regarding documents relied on by petitioner with respect to factors (1) and (3), above, since even assuming the authenticity of such documents, we would find against petitioner. Although the first three factors relied on by petitioner are of some evidential value, they are by no means conclusive. Petitioner's control over the corporation by virtue of his position as the sole stockholder and as an officer-director invites special scrutiny. Jack Haber,supra.These elements of control and lack of adverse interest between the parties require that *110 we look beyond the mere form in which transactions have been cast, in order to insure that the formal actions by the parties reflect rather than disguise the true nature of the transactions. Elliott J. Roschuni,29 T.C. 1193 (1958), affd. per curiam 271 F. 2d 267 (5th Cir. 1959); W. T. Wilson,10 T.C. 251, 256 (1948), affd. 170 F. 2d 423 (9th Cir. 1948).
We would view evidence of substantial repayments during the years in issue as considerably more persuasive of a bona fide intention to repay than the formal trappings of a debt obligation. While credits to the account during the years in issue totaling $9,522.89 create the appearance of repayment, they were for the most part merely book entries which were not representative of payments made on the account. For example, there were credits in 1965 totaling $2,500 where the corresponding debits were to payroll. There is no relationship between these debits to payroll and salary or other compensation accrued or paid to petitioner. The testimony of petitioner's accountant regarding these entries was that they were not representative of loan repayments but were merely offsetting book entries. Also in 1965, the loan account was both *111 debited (increasing the loan balance) and credited (reducing the loan balance) in the amount of $4,800 within the space of one day. In this regard, the corporation's cash disbursements journal indicates a disbursement to petitioner of $4,800 on May 26, 1965 (debited to the loan account) and its cash receipts journal indicates a receipt of $4,800 on the following day, which was credited to the loan account. Petitioner was unable to provide an explanation for this "transaction" and we are left to conclude that it was merely for the purpose of establishing a substantial credit to the account. Finally, there are credits to the loan account in 1965, totaling $1,902.42, for which the only posting reference is to the journal. The journal entries referred to are not in evidence, but petitioner's accountant testified that these were also merely "offsetting book entries." Although respondent has attributed dividend income to petitioner only to the extent that the debits to the loan account exceeded the credits, we are extremely hesitant to rely on these credits as evidencing an intention to repay. Petitioner has not established that the credits to the account were anything other than book *112 entries or that the credits were representative of actual transactions. Viewed in this light, the credits cut against petitioner's argument of an intention to repay and are rather more indicative of an understanding that the account balance would be reduced without actual repayment by petitioner. We are also hesitant to attach much significance to the fact that the balance in the loan account had been reduced to zero by the time this case was tried. First, there is no proof that the reduction was effected by payments on the account. [5] *113 Secondly, even if all credits to the account in years subsequent to those in issue were representative of payments, we believe they were prompted by the questions raised during the course of the audit. Such payments would shed little light on petitioner's intent during the years in issue. See Walker K. Dean,supra at 45. Additional factors indicating the absence of an intention to create a bona fide obligation to repay are: (1) the absence of security arrangements; (2) the absence of a repayment schedule; (3) the absence of a ceiling on the amount which could be advanced; and (4) the absence of an interest charge for the cash advanced. Finally, we cannot fail to recognize that the corporation has never declared a dividend, notwithstanding the presence of substantial earnings and profits. As stated at the outset, the issue presented here is a factual one. There is no precise formula for the weighing and balancing of the various factors which must be considered in resolving such an issue. However, after a complete review of all the evidence before the Court, we are convinced that the cash advances were distributions with respect to *114 petitioner's stock rather than bona fide loans. There being adequate earnings and profits in the corporation to cover all such distributions, respondent's determination that the advances constituted dividend income is sustained. Issue 2. Personal Expenses Paid by Corporation
Petitioner has admitted that during 1966 and 1967 the corporation paid automobile expenses incurred either for his own personal benefit or for the personal benefit of other family members. Respondent asserts that these expenditures were taxable to petitioner as constructive dividends. Expenditures made by a corporation for the personal benefit of its shareholders may constitute dividend income to the shareholder. Challenge Manufacturing Co.,37 T.C. 650 (1962). There being sufficient earnings and profits in the corporation to cover the amounts in question, we sustain respondent's determination that the expenditures by the corporation for petitioner's personal benefit were constructive dividends. Issue 3. Deductibility of Expenses Relating to Petitioner's Boat
Petitioner entertained business associates on his boat during each of the years in issue and claimed deductions for 55 percent of the total depreciation *115 and operating expenses allegedly incurred with respect to the boat. Respondent argues that petitioners have failed to substantiate the expenditures and depreciation claimed. We agree with respondent. The only evidence before the Court relating to this issue is testimony by petitioner and testimony by one of petitioner's business associates. We have concluded from that testimony that petitioner did entertain business associates on his boat during each of the years in issue. That conclusion, however, leaves us far short from being able to allow the deductions. The parties agree that the deductions claimed are with respect to items described in section 274(a). [6] *117 Section 274(d) provides as follows: (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence *116 corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. There is absolutely no evidence before the Court regarding the amounts claimed as deductions. There is no evidence to show the adjusted basis for the boat or its useful life for *118 purposes of determining depreciation. Petitioner did not even testify as to the amounts of the direct expenditures in issue.Nor is there any evidence of the specific times and places during which the boat was used for business purposes. In light of the complete lack of any evidence as to these elements, we find it incredible that petitioner seriously asks this Court to consider his claim that the substantiation requirements of section 274(d) have been met. Respondent's disallowance of the claimed deductions is sustained. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise indicated.↩
2. The minutes for the board meeting held on January 7, 1960, also appear to be fire damaged. This was not explained.↩
3. Petitioner was confident on direct examination that this resolution was adopted on February 15, 1962. However, he revised his testimony when it was pointed out on cross-examination that the resolution refers to the account balance as of December 31, 1962. The revised testimony was that the resolution was adopted on February 15, 1963, and that the minutes were erroneously dated. ↩
4. Although respondent specifically contends that petitioner submitted "false documents" into evidence, he stipulated that petitioner's trial counsel, David Ostrove, was not involved in the preparation of such documents.↩
5. Petitioner testified that the loans had been "repaid" in full and that part of the repayments were derived from the sale of his boat. Petitioner could not recall any details regarding the sale of the boat--including the year of sale. If the credits to the loan account were in reality representative of repayments by petitioner, it would have been a simple matter for petitioner to document that fact, which he had not done. Bearing in mind that petitioner also characterized the credits to the account during the years in issue as payments by him, when they were for the most part merely book entries, we cannot accept his characterization of subsequent credits without some further documentation.
6. (a) Entertainment, Amusement, or Recreation.-- (1) In general.--No deduction otherwise allowable under this chapter shall be allowed for any item-- (A) Activity.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (B) Facility.--With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. (2) Special rules.--For purposes of applying paragraph (1)-- (A) Dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities. (B) An activity described in section 212 shall be treated as a trade or business.↩