RONALD J. HERISKO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Herisko v. Commissioner
Docket No. 7387-76.
United States Tax Court
T.C. Memo 1978-94; 1978 Tax Ct. Memo LEXIS 423; 37 T.C.M. (CCH) 439; T.C.M. (RIA) 780094; March 7, 1978, Filed *424 Ronald J. Herisko, pro se. Daniel P. Ehrenreich, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1973 and 1974 in the amounts of $132 and $2,032, respectively. One issue having been conceded by petitioner, the only issue remaining for decision is whether petitioner is entitled to carry through to his personal Federal income tax returns for 1973 and 1974 one-half of the net operating loss incurred in each of those years by SHAP Enterprises, Inc., a subchapter S corporation of which petitioner was a 50-percent shareholder during 1973 and 1974. All the facts have been stipulated. At the time his petition was filed, petitioner Ronald J. Herisko (hereinafter petitioner) was a legal resident of Pittsburgh, Pennsylvania. Petitioner filed his Federal income tax returns for 1973 and 1974 with the Director, Philadelphia Service Center, Philadelphia, Pennsylvania. In 1968 petitioner formed SHAP Enterprises, Inc., a Pennsylvania corporation, with a $1,000 capital investment for which he received 150 shares of common stock. Petitioner timely elected under section *425 1372(a) [1]/ to have SHAP Enterprises, Inc. (hereinafter SHAP) treated as a subchapter S corporation for Federal tax purposes. Between 1968 and 1972, petitioner made additional contributions to the capital of SHAP totaling $12,500. During the taxable years 1968, 1969, 1970, 1971, and 1972, petitioner reduced his adjusted basis in SHAP to zero by carrying through to his individual income tax returns the losses incurred by SHAP. During 1973 Forry C. Laucks (hereinafter Laucks) purchased 150 shares of common stock in SHAP for $3,000. Prior to his purchase of shares in SHAP, Laucks agreed to take necessary steps to continue SHAP as a subchapter S corporation for tax purposes. After Laucks purchased his interest in SHAP, he filed a timely election with the Internal Revenue Service consenting to continue the subchapter S status for SHAP. Shortly after his purchase of SHAP common stock, Laucks, pursuant to an agreement reached with petitioner, loaned SHAP $15,000. Petitioner and Laucks, as equal shareholders, also agreed to divide *426 any profit or losses of SHAP in proportion to their ownership of stock in the corporation. During 1973, SHAP incurred a net operating loss of $19,577.94. On his Federal income tax return filed for 1973, petitioner carried through one-half of the net operating loss of SHAP, in the amount of $9,788.97. Petitioner's 1973 return shows as adjusted gross income a net loss of $8,539.58, resulting in part from the carry through to his individual return of one-half of the net operating loss of SHAP for 1973 in the amount of $9,788.97. During 1974, SHAP incurred a net operating loss of $13.28. On his Federal income tax return for 1974, petitioner carried through one-half of the net operating loss of SHAP in the amount of $6.64. Petitioner carried forward to his 1974 return the net loss of $8,539.38 shown on his return for 1973. In the notice of deficiency, respondent disallowed petitioner's carry through to his individual returns for 1973 and 1974 of one-half of SHAP's net operating losses incurred in those years. Respondent also increased petitioner's taxable income in the amount of $2,365 to reflect recapture of depreciation on the sale by petitioner of a sailboat during 1973. *427 [2]/ Under section 1374(a), the net operating loss of an electing subchapter S corporation is passed through to the shareholders and allowed as a deduction from gross income. Section 1374(c)(1) provides that each shareholder is entitled to deduct his pro rata share of such loss, but section 1374(c)(2) limits the amount of the deduction to the sum of the adjusted basis of the shareholder's stock in the subchapter S corporation and the adjusted basis of any indebtedness of the corporation to the shareholder. Section 1.1374-1(b)(4), Income Tax Regs., provides that any excess current net operating loss over this limit is not deductible in any taxable year. See also Roberts v. Commissioner,398 F.2d 340, 342 (4th Cir. 1968), affg. 48 T.C. 666 (1967), cert. denied 393 U.S. 936 (1968). Under the provisions of section 1374(c)(2), respondent's position is that, since petitioner had a zero basis during and at the end of both 1973 and 1974, he is not entitled to carry through to his individual returns any portion of the net operating losses *428 incurred by SHAP during 1973 and 1974. We agree. Section 1374(c)(2), along with the other provisions of subchapter S, was enacted as part of the Technical Amendments Act of 1958. The report of the Committee on Finance of the Senate discloses the purpose of this section as follows (1958-3 C.B. 1141): The amount of the net operating loss apportioned to any shareholder pursuant to the above rule is limited under section 1374(c)(2) to the adjusted basis of the shareholder's investment in the corporation; that is, to the adjusted basis of the stock in the corporation owned by the shareholder and the adjusted basis of any indebtendess of the corporation to the shareholder. * * * During the taxable years 1968, 1969, 1970, 1971, and 1972, petitioner's adjusted basis in SHAP was entirely consumed by net operating losses incurred during those years. Inasmuch as petitioner, due to the pass through of prior losses, had a zero basis in SHAP at all times during 1973 and 1974, he is entitled to no deductions for losses incurred by that corporation on his individual returns filed for these years. Haber v. Commissioner,52 T.C. 255 (1969), affd. 422 F.2d 198 (5th Cir. 1970); *429 Levy v. Commissioner,46 T.C. 531 (1966); Plowden v. Commissioner,48 T.C. 666 (1967), affd. 398 F.2d 340 (4th Cir. 1968). Further since petitioner is not entitled to carry through to his individual tax return any amount of SHAP's 1973 net operating loss, he has no net operating loss from 1973 to carry forward to his individual return for 1974. Petitioner contends that, although the language of section 1374(c)(2) clearly mandates the result sought by respondent, that section "[interferes] with the contractual rights of the petitioner and his co-shareholder (Laucks) so as to impair the obligations under that contract in violation of the constitution of the United States, Article I, Section 10, thereof, as that article extends to the Federal government by virtue of the Fifth and Fourteenth Amendments of due process and equal protection under the law." [3]/ Petitioner also argues that he and Laucks (presumably to prevent the alleged inequity referred to in the above paragraph) entered into an agreement whereby *430 Laucks was to provide petitioner with an adjusted basis in his stock to enable him to pass through the net operating losses to petitioner's individual return. Petitioner reasons that there is no "adverse affect [sic] on the tax revenues if one taxpayer by agreement forfeits a tax advantage in favor of a different taxpayer, so long as he pays the tax due on the income for which the forfeited deduction would have been applicable." This whole argument lacks merit. To begin with, other than the general agreement that profits and losses were to be divided equally, the record is devoid of any agreement which provides petitioner with an adjusted basis required to support a tax deduction. Petitioner's factual premise is, therefore, missing. Moreover, such an agreement, assuming it exists, directly contradicts the long recognized general policy underlying the taxing statutes to confine allowable losses to the taxpayer sustaining them, [4]/ i.e., to treat them as personal to him and not transferable to or usable by another. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934); Woolford Realty Company v. Rose,286 U.S. 319, 326 (1932). *431 In fine, we think that petitioner's constitutional argument is fraught with flaws and inaccuracies and is, for the most part, based on facts not a part of the record in the instant case. [5]/ Further, outside of general references to several clauses and amendments to the Constitution, petitioner cites no authority to support the constitutional argument which he attempts to frame. Thus we hold that petitioner has wholly failed to advance any discernible constitutional grounds on which to attack the provisions of section 1374(c)(2), as they apply to him. Moreover, we are convinced that the provisions of that section are not unconstitutional. *432 It is familiar learning that an Act of Congress is not lightly to be set aside, and doubt must be resolved in its favor. Further the presumption in favor of validity is particularly strong in the case of a revenue measure. Penn Mutual Indemnity Co. v. Commissioner,32 T.C. 653, 658 (1959). To be sure, the legislative history, set out above, indicates that section 1374(c)(2) is founded on a rational basis, i.e., Congress' desire to limit the deductibility of a subchapter S corporation's net operating loss to the shareholder's "adjusted basis of [his] investment in the corporation." A net operating loss, like any other deduction, is a matter of legislative grace, and Congress unquestionably has the power to condition, limit, or deny a deduction from gross income in order to arrive at the net that it chooses to tax. New Colonial Ice Co. v. Helvering,supra at 440; Helvering v. Independent Life Ins. Co.,292 U.S. 371, 381 (1934); Burnet v. Thompson Oil and Gas Co.,283 U.S. 301, 304 (1931). Moreover, since all shareholders of an electing subchapter S corporation which incurs a net operating loss for its taxable *433 year are treated alike under the section 1374(c)(2) limitation, it cannot be claimed that such limitation creates an arbitrary, capricious, unreasonable, or unfair classification. See Brushaber v. Union Pac. R.R.,240 U.S. 1, 24, 25 (1916); High Plains Agricultural Credit Corp. v. Commissioner,63 T.C. 118, 127 (1974). We can find no constitutional infirmity in section 1374(c)(2) and therefore hold that the limitation of that section is not unconstitutional. Decision will be entered for respondent. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
2. /↩ Petitioner concedes the correctness of this adjustment for the recapture of depreciation.
3. / Petitioner does not challenge the validity of section 1.1374-1(b)(4), Income Tax Regs.↩, referred to above.
4. /↩ Under the clear terms of section 1374(c)(1), which petitioner does not appear to attack, the net operating loss sustained by a subchapter S corporation in a taxable year is allocated to the shareholders in proportion to their stock ownership. Thus petitioner in the instant case is treated as having sustained 50 percent of the net operating loss of SHAP for the years at issue.
5. /↩ Petitioner maintains that since SHAP had but one year of activity from which the new investing shareholder (Laucks) could take a net loss deduction against his basis in the stock, Laucks was unconstitutionally deprived of his property without due process because the only way he could take a net loss deduction after 1973 was by transferring his stock, declaring the corporation bankrupt, or the stock worthless. However, this argument proceeds from the assumption that in 1974 and thereafter SHAP was essentially defunct due to the unsuccessful previous year's efforts -- a fact not in the record. Also petitioner's focus on the tax effects to his co-shareholder, Laucks, is misplaced since he is not a petitioner herein, and his taxes are not before this Court.