HAROLD W. KATZ AND ELIZABETH G. KATZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Katz v. Commissioner
Docket No. 20165-87
United States Tax Court
T.C. Memo 1990-533; 1990 Tax Ct. Memo LEXIS 587; 60 T.C.M. (CCH) 991; T.C.M. (RIA) 90533; October 15, 1990, Filed *587 Decision will be entered under Rule 155. Carol A. Hyde, for the petitioners. Gina A. Gulotty, for the respondent. CLAPP, Judge. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies *588 in and additions to petitioners' Federal income taxes as follows: Additions to tax under section
Year
Deficiency
6653(b)
6653(b)(1)
6653(b)(2)
1980
$ 12,376  $ 6,188
--
--
1981
14,262  7,131
--
--
1982
1,770  -- $ 885 * 1983
1,269  -- 635  * After a partial concession by respondent, the issues are (1) whether petitioner's withdrawals of funds from the estate for which he was executor constitute taxable income; (2) whether petitioners are liable for additions to tax for fraud pursuant to section 6653(b); and (3) whether petitioners are entitled to depreciation deductions in the amounts claimed on their returns. All section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. Petitioners *589 resided in Glens Falls, New York when they filed their petition. All references to petitioner in the singular will be to Harold W. Katz. Petitioner was a practicing attorney for nearly 30 years prior to his resignation in June 1985. During the taxable years in issue, petitioner served as a family court judge in Warren County, New York. In June 1980, petitioner was appointed executor for the Estate of Hans Heinrich Spiesen (the estate). At or about the time of his appointment as executor, petitioner opened a checking account for the estate with the Glens Falls National Bank Trust Company, into which he deposited funds belonging to the estate. Petitioner was the only person authorized to draw checks against the estate's checking account. During the years in issue, petitioner issued 40 checks made payable to himself, as executor for the estate, and drawn against the estate's checking account for the following amounts: Amount
Date 1980
1981
1982
1983
6/5/80
$ 6,000.00 --   --   --   6/6/80
6,000.00
--   --   --   6/9/80
6,000.00
--   --   --   6/12/80
2,500.00
--   --   --   6/19/80
1,000.00
--   --   --   7/21/80
4,500.00
--   --   --   7/24/80
2,000.00
--   --   --   8/4/80
1,000.00
--   --   --   12/8/80
250.00
--   --   --   12/10/80
225.00
--   --   --   1/8/81
--   $ 72.94   --   --   2/17/81
--   3,843.20
--   --   2/23/81
--   693.22
--   --   2/23/81
--   4,312.81
--   --   3/3/81
--   900.00
--   --   3/6/81
--   1,600.00
--   --   3/10/81
--   1,400.00
--   --   3/12/81
--   3,000.00
--   --   3/19/81
--   2,700.00
--   --   5/13/81
--   135.40
--   --   7/8/81
--   900.00
--   --   7/11/81
--   400.00
--   --   8/12/81
--   4,500.00
--   --   8/13/81
--   1,000.00
--   --   8/17/81
--   4,000.00
--   --   8/20/81
--   4,700.00
--   --   9/15/81
--   183.42
--   --   9/19/81
--   323.47
--   --   10/13/81
--   98.76
--   --   11/14/81
--   126.47
--   --   12/8/81
--   226.43
--   --   12/11/81
--   900.00
--   --   3/26/82
--   --   $ 1,500.00
--   4/1/82
--   --   1,000.00
--   4/13/82
--   --   1,000.00
--   5/29/82
--   --   1,000.00
--   3/17/83
--   --   --   $ 200.00  4/15/82
--   --   --   382.00
4/18/83
--   --   --   350.00
4/19/83
--   --   --   1,850.00
TOTAL:
$ 29,475.00
$ 36,016.12
$ 4,500.00
$ 2,782.20
*590 Petitioner either deposited these checks into his personal bank accounts or negotiated them for cash. Petitioner at some time prior to trial executed 20 documents which purported to evidence 20 loan transactions between himself and the estate. Each document was payable on demand at 6-percent interest per annum, with no repayment schedule or repayment date stated on its face. In May 1984, the beneficiaries of the estate, who lived in Germany, petitioned the Surrogate Court for Washington County, New York to compel petitioner as executor for the estate to render and file his account of proceedings. The Surrogate Court ordered petitioner to file his account, which he finally did in January 1985. By order dated April 17, 1985, the Surrogate Court surcharged petitioner $ 83,811.31 plus interest, pursuant to the compulsory accounting proceeding, and denied petitioner fiduciary commissions. Petitioner paid the estate $ 101,994.06. In December 1985, petitioner was indicted on 16 counts of third-degree larceny, 15 counts of second-degree larceny, and 9 counts of petty larceny in connection with the funds removed from the estate. In August 1986, petitioner, in response to the indictment, *591 pled guilty in the Supreme Court for Warren County to one count of third-degree grand larceny, a felony. Petitioner admitted that on February 23, 1981, he stole property of the estate having a value of more than $ 250 by issuing a check drawn on the estate's account and made payable to himself in the amount of $ 693.22. During the years in issue, petitioners owned commercial rental property which they acquired in 1979. Petitioners reported a depreciable basis in the property of $ 82,993 and claimed depreciation deductions of $ 3,870.70 per year for each of the years in issue. OPINION Petitioner contends that the amounts he withdrew from the estate were loans and therefore not includable in income. Conversely, respondent argues that petitioner embezzled the funds from the estate. To the extent that petitioner is found to have embezzled money from the estate, he has income for those years under section 61(a). Gains from embezzlement constitute reportable income, as do other accessions to wealth under the dominion and control of the taxpayer. James v. United States, 366 U.S. 213 (1961). Petitioner has the burden to prove the merits of his claim and to overcome *592 the presumption of correctness that attaches to respondent's determination. Welch v. Helvering, 290 U.S. 111 (1933). After reviewing the evidence presented, we find that petitioner has failed to meet his burden. Whether the transactions between petitioner and the estate were loans is a factual question to be decided based upon a consideration of all the pertinent facts and circumstances. Haber v. Commissioner, 52 T.C. 255, 266 (1969), affd. 422 F.2d 198 (5th Cir. 1970). Although courts have considered several objective factors in deciding whether a payment constitutes a loan, the determinative question is whether, at the time the parties entered into the transaction, the recipient of the funds intended to make monetary repayment of the amount of the advance, and whether the person advancing the funds intended to enforce repayment. Beaver v. Commissioner, 55 T.C. 85, 91 (1970); Haber v. Commissioner, 52 T.C. at 266. Thus, to establish that the funds obtained from the estate represent loans and not embezzled income, petitioner must present evidence of a "consensual recognition, express or implied, *593 of an obligation to repay." James v. United States, 366 U.S. at 219. In the instant case, petitioner presented at trial 20 promissory notes which evidenced 20 of the withdrawals he had made from the estate. Each note was unsecured and payable on demand at 6-percent interest per annum. There was no repayment schedule or repayment date listed on the face of the notes. On all but three of the notes, the dates and amounts corresponded exactly to the dates and amounts of withdrawals. Petitioner testified at trial that these notes were executed almost contemporaneously with the withdrawals, and that he intended the withdrawals as loans. Respondent's expert witness, Mary Fitzgerald, a physical scientist with the Internal Revenue Service, Criminal Investigation Division, convinced this Court otherwise. Ms. Fitzgerald testified that the ink used to write two of the notes had not yet been manufactured as of the date on the notes. She also testified that, based on indentations found on several of the notes, petitioner had prepared batches of notes at a single sitting and not from time to time as the withdrawals were made. Thus, contrary to petitioner's testimony, the *594 notes were not prepared "within a reasonable time" after the withdrawals, and further, some of the notes could not have been prepared on the dates indicated on their face. Based on our observation of petitioner and Ms. Fitzgerald as witnesses, we conclude that the notes were not prepared simultaneously with the withdrawals. The best that can be said is that they were prepared before the trial. In addition, these notes covered only a portion of the amounts withdrawn from the estate. Petitioner did not present any evidence to explain the nature of the other withdrawals. Petitioner argued on brief that, because he made no attempts to conceal the withdrawals and because he knew when he made the withdrawals that he would be required to make an accounting to the Surrogate Court, it is obvious that he intended the withdrawals to be loans. This argument is unpersuasive. "By this logic, no thief would ever be chargeable with theft income since he could argue that he believed that the stolen funds would someday be missed and his theft discovered and he thus would be called upon to make restitution." Foster v. Commissioner, T.C. Memo. 1989-276. Further, a self-imposed *595 obligation to repay cannot transform the withdrawals into loans. The Fifth Circuit stated in Moore v. United States, 412 F.2d 974, 979-980 (5th Cir. 1969): The reasoning of James is that while an embezzler has a legal obligation to repay and may intend to repay, his legal obligation and intent are not the same as an actual agreement between lendor and borrower entailing "consensual recognition" of an obligation to repay and exact conditions of repayment. * * * The absence of a consensual agreement between the party providing the money and the party receiving it is fatal to the Trustee's contention that the money should be excluded from gross income on a loan theory. Therefore, it must be treated as income. It is difficult to see how a consensual recognition of an obligation to repay the estate's funds could have existed in the instant case when the beneficiaries of the estate from whom the money was in actuality "borrowed" were unaware of its absence. Even if the notes prepared by petitioner were prepared contemporaneously with the withdrawals, and we do not believe that they were, there is no evidence that decedent by the terms of the will or the *596 estate beneficiaries had ever authorized or approved of these withdrawals. Further, as the notes were unsecured and payable upon demand, petitioner, as executor of the estate, was the payee who would demand repayment. Petitioner's stated intention to repay is belied by the fact that he never volunteered to repay the funds, and that the heirs of the estate had to compel an accounting to recover the funds. Petitioner's after the fact labeling of the withdrawals as loans does not alter their underlying character. Petitioner also contended that, based on decedent's will which gave him "the fullest power and authority in all matters and questions" as executor of the estate and based on his long-standing slondstanding personal and professional relationship with the decedent, he believed he was authorized to borrow money from the estate. Again, however, petitioner failed to present any evidence that decedent ever explicitly authorized him to borrow money from the estate. The provision in the will that petitioner mistakenly interprets as implicit authorization to borrow funds is merely "boiler-plate" language giving the executor broad powers to act in the best interest of the estate. *597 Under the laws of the State of New York, which control the underlying question of estate practice, petitioner, as executor for the estate, was under a fiduciary duty to exercise reasonable care, diligence, and prudence in the administration of the estate. N.Y. Est. Powers & Trusts Law sec. 11-1.7 (McKinney 1990). This duty included keeping property held as a fiduciary separate from his individual property. N.Y. Est. Powers & Trusts Law sec. 11-1.6 (McKinney 1990). Consequently, not only was petitioner unauthorized to "borrow" the estate's funds for his own purposes, but he was precluded by law from so doing. The conclusion is inescapable that there was no consensual recognition of an obligation to repay when petitioner withdrew funds from the estate. Therefore, the funds constitute taxable income to petitioner in the years of receipt when petitioner took possession and control of the funds for his own uses and purposes. Foster v. Commissioner, supra; Solomon v. Commissioner, 732 F.2d 1459 (6th Cir. 1984), affg. a Memorandum Opinion of this Court. The next issue for determination is whether petitioners are liable for additions to tax *598 pursuant to section 6653(b). Respondent has the burden of proving by clear and convincing evidence that at least part of the underpayment of tax for each of the years in issue is due to petitioners' fraud with intent to evade tax. Sec. 7454(a); Rule 142(b); Beaver v. Commissioner, 55 T.C. 85 (1970). Fraud is never presumed or imputed. Beaver v. Commissioner, supra at 92. However, since fraud rarely can be established by direct proof, fraudulent intent may be proven circumstantially from a consideration of the entire record. The taxpayer's entire course of conduct may establish the requisite intent. Stone v. Commissioner, 56 T.C. 213 (1971). We have found that petitioner received income as a result of embezzling funds from the estate, and that he was obligated to report and pay tax on such income. We do not believe that a man of petitioner's intelligence, background, and ability was unaware that the embezzled funds were taxable income in the years of receipt. "In determining the presence or absence of fraud the trier of the facts must consider the native equipment and the training and experience of the party charged." Iley v. Commissioner, 19 T.C. 631, 635 (1952). *599 The record is clear that petitioners failed to report this income in the four years of receipt. In the first two years, the unreported amounts were substantial, constituting 55 and 73 percents, respectively, of income actually reported. In the last two years at issue, the amounts were smaller, but still unreported. Consistent and substantial understatement of income can be considered as evidence of fraud. Stone v. Commissioner, 56 T.C. at 225; Bilsky v. Commissioner, 31 T.C. 35, 43 (1958). Further evidence of fraud is the failure to keep records or keeping inaccurate records. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court. Although petitioner kept records, those records were never made known to anyone else until the estate beneficiaries, who were foreign residents, demanded an accounting. There was a fair chance that petitioner would "get away with it." No attempt to create a paper trail was made until after he was called to task. Then the notes prepared by petitioner were backdated. These notes and petitioner's testimony concerning their execution were intended to misrepresent *600 the actual nature of the transactions. Additionally, these notes pertained to only 20 of the withdrawals made by petitioner from the estate. Petitioner presented no records to account for the other 20 withdrawals. Another indicia of fraud is whether the activity was illegal. Bradford v. Commissioner, 796 F.2d at 308. Petitioner pled guilty to third-degree larceny, a felony, in connection with funds withdrawn from the estate in 1981. Further, petitioner rather egregiously breached his fiduciary duty to estate beneficiaries to the extent of personally benefiting by several thousand dollars. It is clear that petitioner's activities were improper and illegal. Consequently, based upon the entire record, we sustain respondent's determination with respect to the additions to tax for fraud for all the years in issue. Foster v. Commissioner, supra; Solomon v. Commissioner, supra. However, only petitioner is liable for these additions to tax. With respect to Mrs. Katz, respondent has offered no evidence to show that any part of the deficiencies determined against her are due to fraud with intent to evade tax. We find, therefore, *601 that respondent has failed to meet his burden of establishing by clear and convincing evidence that she is liable for the section 6653(b) fraud additions. See sec. 301.6653-1(f), Proced. and Admin. Regs.; Stone v. Commissioner, 56 T.C. 213, 227 (1971). The final issue for determination is whether petitioners are entitled to deductions for depreciation on commercial rental property that they owned. Petitioners claimed a depreciable basis in the property of $ 82,993, resulting in total depreciation deductions of $ 3,870.70 per year for each of the years in issue. In the notice of deficiency, respondent determined that petitioners' basis in the property was $ 47,000. Subsequently, and based on additional information provided by petitioners, respondent redetermined the total depreciable basis of the property to be $ 69,183. At trial, petitioners contended that they had substantiated their basis in the property previously during an earlier audit of their income tax returns with respondent's revenue agent. However, no evidence of such substantiation was introduced at trial. Since petitioners have not shown this Court that depreciation should be in excess of $ 69,183, *602 the amount conceded by respondent, respondent's determination as modified is sustained. See Mayerson v. Commissioner, 47 T.C. 340 (1966). Finally, we note that respondent has determined in his notice of deficiency that petitioners received $ 65 in interest income in 1983. This issue was not raised by the parties at trial or on brief and, therefore, we will assume that it has been conceded by petitioners. Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on the deficiency.↩